## THIBEAULT, etc. v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

### Case No. 85-3287

State of Florida, Division of Administrative Hearings

November 6, 1985

### APPEARANCES OF COUNSEL

**Cynthia Thibeault** on behalf of her daughter/petitioner.

**Gerry L. Clark,** HRS, District Seven, Assistant General Counsel, for respondent.

### OPINION

DIANE K. KIESLING, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a formal hearing was held on October 29, 1985,

in Orlando, Florida, before the Division of Administrative Hearings by its duly designated Hearing Officer, Diane K. Kiesling.

The issue is whether the child, Rhonda Coutu, is eligible for services from Children's Medical Services for treatment of a hemangioma of her face.

The Petitioner presented the testimony of her mother, Cynthia Thibeault, together with six exhibits. Petitioner's Exhibits 206 consisted of photographs of the child at various ages. The parties stipulated that those exhibits could be returned to Petitioner at the conclusion of the hearing and the exhibits were therefore released from the record and returned to the mother. Respondent presented the testimony of Joseph G. Matthews, M.D., together with two exhibits.

The parties waived the filing of a transcript and proposed orders.

## FINDINGS OF FACT

1. Rhonda Coutu is a nine year-old child who was born with a hemangioma tumor on the left side of her face. At age four, it was determined that she also suffered from a complete heart block and a pacemaker was inserted.

2. Since age four, Rhonda has been covered for treatment of the hemangioma and the heart block by Children's Medical Services (CMS). The parties stipulated that Rhonda is financially eligible for this coverage.

3. While residing in the Tampa, Florida, area, Rhonda received two surgical excisions on the hemangioma which were covered by CMS. She was under the care of Anthony J. Pizzo, M.D., a specialist in plastic and reconstructive surgery. She was scheduled for two or three additional surgeries.

4. In August, 1982, Rhonda moved to Orlando and CMS coverage for her medical conditions was transferred to HRS District VII. On April 28, 1983, Rhonda had her third surgical excision of the hemangioma by J. Barry Boyd, M.D., a specialist in plastic and reconstructive surgery. This surgery was performed in Orlando and was covered by CMS in District VII. The clinic notes indicate that the further surgeries were anticipated for the hemangioma.

5. In July, 1985, Dr. Boyd determined that Rhonda was ready for her next surgery on the hemangioma. Dr. Boyd informed CMS by letter dated July 3, 1985, of his recommendation that they proceed with further debulking and contouring of the left facial deformity and he requested authorization for the proposed reconstructive surgery. He

indicated that the proposed procedure is part of a multiple staged treatment plan for Rhonda's hemangioma.

6. Joseph G. Matthews, M.D., medical director and program supervisor of CMS in District VII, reviewed the file of Rhonda Coutu and denied authorization for the surgery. Dr. Matthews is an orthopedic surgeon. In Dr. Matthew's opinion the surgery is cosmetic and is not necessary to correct a functional disorder. Dr. Matthews has never examined Rhonda. He based his determination solely on the clinical notes and the letter from Dr. Boyd. Because these sources did not specifically identify the functional aspects of Rhonda's disorder, he decided there was no functional component. Dr. Matthews acknowledged that no records clarified whether the previous three surgeries were cosmetic or functional. He apparently interpreted the term "reconstructive surgery" to mean cosmetic only. Dr. Matthews did acknowledge that CMS treats abnormalities of function or form, such as those related to birth defects and diseases. An abnormal growth could be included in the term "abnormalities of function or form."

7. The surgery proposed for Rhonda includes the removal of additional hemangioma material and revision of the previous scarring.

8. Dr. Pizzo, who treated Rhonda before she moved to Orlando and who performed the first two surgeries, stated in a letter dated August 29, 1985, that the deeper or cavernous portions of the hemangioma tumor still remain, causing severe disproportion in the two sides of her face. This disproportion is evidenced by a large area of distension on the left side of the face, covered by hyperpigmented, abnormal skin. According to Dr. Pizzo, the proposed reconstructive surgery is necessary to correct a pathological condition. He makes it clear that all of the surgeries performed and proposed for Rhonda are reconstructive and that no component should be considered cosmetic.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the parties to and the subject matter of this proceeding. Section 120.57(1), *Florida Statutes.*

Section 391.021, *Florida Statutes*, defines an individual eligible for CMS services as "an individual below the age of 21 years who has an organic disease, defect, or condition which may hinder the achievement of his normal growth and development." Further, Rule 10J-2.10, *Florida Administrative Code*, provides:

Treatment will be available to medically indigent children who have a chronic, or potentially chronic disease, defect, or any condition

224

which may hinder the achievement of normal growth and development.

Section 391.021(3), *Florida Statutes,* defines medical services to include "the prevention, diagnosis, and treatment of human disease, pain, injury, deformity, or disabling physical conditions."

The parties stipulated that Rhonda meets the criteria for financial eligibility and the only question is whether the proposed surgery is covered. While Dr. Matthews asserts that coverage is available only for conditions that cause functional impairment, clearly the statute and rules nowhere refer to function.

Rhonda's hemangioma tumor is an organic defect or condition. It is a deformity. Her face cannot and will not achieve normal growth without surgical excision and reconstruction of the pathological condition. This is a birth defect and will require additional surgeries to correct the deformity.

CMS has already covered three of the five anticipated surgeries. One of the surgeries was performed in District VII. Both of the specialists in reconstructive surgery recognize that the first three surgeries were part of a multiple stage plan of excision and contouring to correct the organic condition and both recommend that the proposed surgery be authorized. It is one stage of the multiple stage treatment which has been anticipated and authorized since Rhonda was six years old. Specifically, Dr. Pizzo indicates that no component of the performed or proposed surgeries should be considered cosmetic.

It is concluded that the opinions of Dr. Boyd and Dr. Pizzo are more credible and are afforded more weight. Both are board certified in the specialty which relates to Rhonda's condition and treatment. Both have examined and treated Rhonda in the past. Dr. Matthews, on the other hand, is an orthopedic surgeon who has never examined Rhonda. He based his determination to deny authorization on his own definition of cosmetic surgery and on the failure of the treating physicians to use certain magic words, i.e., function. Yet, Dr. Matthews stated that CMS treats abnormalities of function or *form.* Certainly Rhonda's abnormality is one of form that is interfering with her normal growth.

After having approved three previous surgeries as part of a multiple stage treatment plan, CMS cannot now change the rules in the middle of the game by inserting a new definition which is not contained in the statute or the administrative code.

It is concluded that the reconstructive surgery proposed by Dr. Boyd meets the statutory and rule definitions of covered treatment and

225

should be authorized for coverage by CMS. The surgical course of treatment recommended by the experts in the treatment of Rhonda's hemangioma tumor should be carried out.

## RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that the Department of Health and Rehabilitative Services enter a Final Order directing Children's Medical Services for District VII to authorize coverage for the reconstructive surgery recommended and proposed by J. Barry Boyd, M.D.

DONE and ORDERED this 6th day of November, 1985, in Tallahassee, Florida.